UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ANDREW T. HINCKLEY, <br><br> Plaintiff, <br><br> v. <br><br> THURSTON COUNTY, et al., <br><br> Defendants. | NO. CV-06-3067-JPH <br><br> ORDER DENYING DEFENDANT'S MOTION TO STRIKE, DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

I. <u>Procedural History</u>

Plaintiff Andrew T. Hinckley ("Plaintiff") filed a civil rights action, pursuant to 42 U.S.C. § 1983, on July 3, 2005. (*See* Ct. Rec. 29). An amended complaint was filed on November 15, 2005. (*Id.*) On June 14, 2006, United States District Judge Robert J. Bryan granted the summary judgment motion of Defendants Thurston County and Gary S. Edwards. (*Id.*) Defendants Thurston County and Gary S. Edwards, and all claims against them, were dismissed, and the action was transferred to this Court in July of 2006. (*Id.*) On August 10, 2007, the parties consented to the jurisdiction of the Magistrate Judge in this case. (Ct. Rec. 62). Both parties' filed summary judgment motions in February of 2008. (Ct. Rec. 73; Ct. Rec. 85). These motions are currently pending before the Court.

ORDER - 1

1    Plaintiff's amended complaint alleges that Defendants are
2 liable, pursuant to 42 U.S.C. § 1983, for the deprivation of his
3 Eighth Amendment rights because Defendants failed "to provide a
4 safe environment and protection from antagonistic inmates."  (Ct.
5 Rec. 29).  Plaintiff only seeks summary judgment as to liability
6 on this claim (Ct. Rec. 73) and contests Defendants' motion for
7 summary judgement as to this claim only (Ct. Rec. 92).
8 Accordingly, Plaintiff's claim, pursuant to 42 U.S.C. § 1983, that
9 Defendants are liable for the failure to protect is the only issue
10 remaining to be resolved in this case.  (Ct. Rec. 73; Ct. Rec.
11 85).  This final claim is the subject of both parties' summary
12 judgment motions.  (Ct. Rec. 73; Ct. Rec. 85).
13    While Plaintiff's amended complaint alleges claims against
14 Sheriff Ken Irwin, a claim that Defendants were deliberately
15 indifferent to Plaintiff's medical needs, and claims under the
16 Washington State Constitution (*See* Ct. Rec. 29), Plaintiff does
17 not contest Defendants' motion for summary judgment on these
18 claims (Ct. Rec. 92 at 1).  Plaintiff concedes that Defendants are
19 entitled to summary judgment on the claims as to Sheriff Irwin,
20 the claim of deliberate indifference to medical needs and the
21 claims under the Washington Constitution.  (*Id*.)  Accordingly,
22 Defendants' motion for summary judgment as to Plaintiff's claims
23 against Sheriff Ken Irwin, Plaintiff's claim as to deliberate
24 indifference to medical needs and Plaintiff's claims under the
25 Washington State Constitution is **GRANTED** and the claims are
26 dismissed with prejudice.
27 ///
28 ///

ORDER - 2

## II. Defendants' Motion to Strike

On February 19, 2008, in response to Plaintiff's motion for summary judgment (Ct. Rec. 73), Defendants filed a motion to strike evidentiary submissions referred to in Plaintiff's motion for summary judgment. (Ct. Rec. 89).

Federal Rule of Civil Procedure 12(f) provides, in pertinent part, that "[u]pon motion . . . or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).

Defendants contend that deposition excerpts submitted by Plaintiff were not attached to an appropriate authenticating affidavit and that unauthenticated documents cannot be considered on a motion for summary judgment. (Ct. Rec. 89 at 2-3). However, on February 26, 2008, Plaintiff filed a supplemental declaration (Ct. Rec. 94), which cured the prior oversight. The deposition excerpts are now adequately authenticated.

Defendants also contend that documents attached to the declaration of Plaintiff's counsel and, specifically, Plaintiff's exhibit 28 do not comply with Fed. R. Civ. P. 56 and the Federal Rules of Evidence. (Ct. Rec. 89 at 3-4). Plaintiff responds that the documents attached as exhibits to the declaration were provided by Defendants in discovery and, thus, are authenticated as documents provided by a party-opponent in response to discovery requests. (Ct. Rec. 93 at 2); *Orr v. Bank of America*, 285 F.3d 764, 777 n. 20 (9th Cir. 2002) (documents produced by a party in discovery were deemed authentic when offered by the party-opponent). Exhibit 28 is a copy of an inmate grievance form that

Plaintiff submitted while incarcerated.  At this stage of the litigation process, and based on the foregoing, the Court denies Defendants' motion to strike.  In any event, considering the Court's ultimate ruling herein (*see infra*), Defendants' are not prejudiced by the Court's denial of their motion to strike.

III.   <u>Summary Judgment Standard</u>

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  Under summary judgment practice, the moving party

> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"  *Id*.  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  *Celotex Corp.*, 477 U.S. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Id*.  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that

ORDER - 4

1  the standard for entry of summary judgment, as set forth in Rule
2  56(c), is satisfied."  *Id*. at 323.
3       If the moving party meets its initial responsibility, the
4  burden then shifts to the opposing party to establish that a
5  genuine issue as to any material fact actually does exist.
6  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,
7  586 (1986).  In attempting to establish the existence of this
8  factual dispute, the opposing party may not rely upon the denials
9  of its pleadings, but is required to tender evidence of specific
10 facts in the form of affidavits, and/or admissible discovery
11 material, in support of its contention that the dispute exists.
12 Fed. R. Civ. P. 56(e); *Matsushita*, 475 U.S. at 586 n. 11.  The
13 opposing party must demonstrate that the fact in contention is
14 material, i.e., a fact that might affect the outcome of the suit
15 under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S.
16 242, 248 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec.*
17 *Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and that the
18 dispute is genuine, i.e., the evidence is such that a reasonable
19 jury could return a verdict for the nonmoving party, *Wool v.*
20 *Tandem Computers, Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987).
21      In the endeavor to establish the existence of a factual
22 dispute, the opposing party need not establish a material issue of
23 fact conclusively in its favor.  It is sufficient that "the
24 claimed factual dispute be shown to require a jury or judge to
25 resolve the parties' differing versions of the truth at trial."
26 *T.W. Elec. Serv.*, 809 F.2d at 631.  Thus, the "purpose of summary
27 judgment is to 'pierce the pleadings and to assess the proof in
28 order to see whether there is a genuine need for trial.'"

ORDER - 5

*Matsushita*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed, *Anderson*, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, *Matsushita*, 475 U.S. at 587 (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

IV. <u>Discussion</u>

　　A. <u>Factual Summary</u>

The events at issue in the instant action occurred at the Yakima County Department of Corrections in Yakima, Washington. In December 2002, Plaintiff was convicted in Thurston County Superior Court of Second Degree Assault and Hit and Run - Injury. Pursuant to a contractual arrangement for inmate housing between Thurston

ORDER - 6

County and Yakima County, Plaintiff was transferred from the Thurston County Jail to the Yakima County DOC on December 29, 2002.  At some time between December 29, 2002, and February 9, 2003, Plaintiff was returned to Thurston County for a brief period and then transferred back to Yakima County.  Upon his transfer back to Yakima County DOC, Plaintiff was assigned to a cell on the north end of the fourth floor in the "G" unit ("4G").  On February 10, 2003, Plaintiff was removed from his cell on 4G by Corrections Officer Curtis Santucci ("Officer Santucci") after Plaintiff pressed an emergency button in his cell and requested reassignment because other inmates in 4G had called him a "snitch."  After contacting the Classification Unit to advise him where to house Plaintiff, Officer Santucci moved Plaintiff to the "B" unit on the second floor ("2B").

Following an incident on February 18, 2003, Plaintiff was moved to housing unit 4B, the Behavior Management Unit ("BMU"), pending a disciplinary hearing.  Due to continued disciplinary problems, Plaintiff was confined in the BMU until March 12, 2003. On March 12, 2003, Classification Corrections Officer Donald Little ("Officer Little") discussed with Plaintiff where he could be housed on the north end of the fourth floor.  Plaintiff informed Officer Little that he could not be placed in certain units, 4F and 4H, on the north end of the fourth floor, but agreed with placement in 4G.  Plaintiff was assaulted by inmates shortly after his placement in 4G and was thereafter transported to the emergency room at Yakima Valley Memorial Hospital.  Upon Plaintiff's return to the Yakima County DOC on March 12, 2003, Plaintiff was reassigned to 2B.

ORDER - 7

As a result of a disciplinary infraction on April 20, 2003, Plaintiff was again placed in the BMU.  On May 10, 2003, Plaintiff was assaulted in the BMU by a different inmate and thereafter transported to the emergency room at the Yakima Valley Memorial Hospital.  After returning to the Yakima County DOC on May 11, 2003, Plaintiff did not experience any other assaults for the remainder of his incarceration which ended on May 29, 2003.

### B. Legal Standard

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States. . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.  42 U.S.C. § 1983.

The statute plainly requires that there be an actual connection or link between the actions of the Defendants and the deprivation alleged to have been suffered by Plaintiff. *Monell v. Department of Social Services*, 436 U.S. 658 (1978); *Rizzo v. Goode*, 423 U.S. 362 (1976).  The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).  In order to state a claim for relief under section 1983, plaintiff must link each named defendant with some affirmative act or omission that demonstrates a violation of Plaintiff's federal rights.

ORDER - 8

"The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones . . . ." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (internal quotations and citations omitted). "The treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Id*. To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison conditions must involve "the wanton and unnecessary infliction of pain." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

Prison officials have a duty to take reasonable steps to protect inmates from physical abuse. *Hoptowit v. Ray*, 682 F.2d 1237, 1250-51 (9th Cir. 1982); *Farmer*, 511 U.S. at 833. To establish a violation of this duty, the prisoner must establish that prison officials were "deliberately indifferent to a serious threat to the inmates's safety." *Farmer*, 511 U.S. at 834. The deliberate indifference standard involves an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious." *Id.* (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). Second, the prison official must "know of and disregard an excessive risk to inmate health or safety." *Id.* at 837.

A local government unit may not be held responsible for the acts of its employees under a respondeat superior theory of liability. *Monell*, 436 U.S. at 691. Rather, to state a claim for municipal or county liability, a plaintiff must allege that he suffered a constitutional deprivation that was the product of a policy or custom of the local government unit. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989).

ORDER - 9

C.  Analysis

Plaintiff's last remaining claim, for which he currently moves for summary judgment, alleges that Defendant Yakima County subjected him to cruel and unusual punishment in violation of the Eighth Amendment. (Ct. Rec. 73-4 at 11). Specifically, Plaintiff alleges that Defendant Yakima County is liable because the violation of his Eighth Amendment rights resulted from a policy or custom of Yakima County. (Ct. Rec. 73-4 at 11-19).

Turning to Defendants' motion, Defendants argue that Plaintiff simply cannot establish that a policy or custom of Defendant Yakima County exists that amounted to deliberate indifference to Plaintiff's safety. (Ct. Rec. 86 at 8-13). Because Plaintiff cannot establish any liability of Defendant Yakima County under 42 U.S.C. § 1983, Defendant Yakima County contends it is entitled to summary judgment on Plaintiff's claim of county liability based on the assaults. (*Id.*)

A county may be held liable under a section 1983 claim only when the county inflicts an injury, and it may not be held liable for the acts of its employees under a respondeat superior theory. *Monell*, 436 U.S. at 694; *Gibson v. County of Washoe,* Nev., 290 F.3d 1175, 1185 (9th Cir. 2002); *Davis v. Mason County*, 927 F.2d 1473, 1480 (9th Cir.), *cert. denied*, 502 U.S. 899 (1991); *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1443 (9th Cir. 1989). At least two avenues may be used to demonstrate a county inflicted constitutional injury. *Gibson*, 290 F.3d at 1185. First, a plaintiff can show that a county itself violated rights or that it directed its employee to do so. *Board of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 404 (1994); *Gibson*, 290 F.3d at

1185.  Secondly, in limited situations, a plaintiff can demonstrate that a county is responsible for a constitutional tort committed by its employee although it did not direct the employee to commit the tort.  *Brown*, 520 U.S. at 406-407; *Canton*, 489 U.S. at 387; *Gibson*, 290 F.3d at 1185.

Under the first avenue, to show that a county violated a plaintiff's rights or instructed its employees to do so, a plaintiff can prove that the county acted with "the state of mind required to prove the underlying violation," just as a plaintiff does when he or she alleges a natural person has violated his federal rights.  *Brown*, 520 U.S. at 405.  Because liability of a local governmental unit must rest on its actions, not the actions of its employees, a plaintiff must go beyond the respondeat superior theory and demonstrate the alleged constitutional violation was the product of a policy or custom of the local governmental unit.  *Pempaur v. City of Cincinnati*, 475 U.S. 469, 478-480 (1986).  Examples of this direct path to county liability include: (1) a governmental unit's policy to discriminate against pregnant women to violate the Fourteenth Amendment, *Monell*, 436 U.S. 658; and (2) a county policy placing aggressive homosexuals in the same jail cell with heterosexuals to violate the heterosexual's Fourteenth Amendment right to personal security, *Redman v. County of San Diego*, 942 F.2d 1435 (9th Cir. 1991) (en banc).  Whether a county itself violated a plaintiff's rights or directed its employees to do so is determined by the county's "policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers."  *City of St. Louis v. Praprotnik*, 485 U.S. 112, 121 (1988) (quoting *Monell*, 436

ORDER - 11

at 690).

Under the second avenue, a plaintiff need not allege the county violated constitutional rights or directed an employee to do so. *Gibson*, 290 F.3d at 1186. A plaintiff can allege that through the county's omissions, it is responsible for a constitutional violation of its employees even though the county's policies were facially constitutional and the county did not direct the employee to take unconstitutional action and lacked the state of mind to prove the underlying violation. *Canton*, 489 U.S. at 387-389. Because a county cannot be held liable under a theory of respondeat superior, a plaintiff must show the county's deliberate indifference led to its omission which caused the employee to commit a constitutional violation. *Canton*, 489 U.S. at 387; *Gibson*, 290 F.3d at 1186. To prove deliberate indifference, the plaintiff must show that the county was on actual or constructive notice that its omission would likely result in a constitutional violation. *Farmer*, 511 U.S. at 841. Compared to the first avenue's more direct route to county liability, "much more difficult problems of proof" are presented when a county employee acts under a constitutionally valid policy to violate a plaintiff's rights. *Brown*, 520 U.S. at 406.

To impose liability under the second (*Canton*) avenue, a plaintiff must show: (1) a county employee violated plaintiff's rights; (2) the county has customs or policies that amount to deliberate indifference; and (3) the policies were the moving force behind the employee's violation of plaintiff's constitutional rights in the sense that the county could have prevented the violation with an appropriate policy. *Gibson*, 290

ORDER - 12

F.3d at 1193-1194; *Amos v. City of Page*, 257 F.3d 1086, 1094 (9th Cir. 2001).

In addressing existence of a policy or custom, the Ninth Circuit Court of Appeals in *Navarro v. Block*, 72 F.3d 712, 714-715 (9th Cir. 1995) explained:

> Proof of random acts or isolated events is insufficient to establish custom. *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1444 (9th Cir. 1989). But a plaintiff may prove "the existence of a custom or informal policy with evidence of repeated constitutional violations which were not discharged or reprimanded." *Gillette v. Delmore*, 979 F.2d 1342, 1348 (9th Cir. 1992), *cert. denied*, __ U.S. __, 114 S.Ct. 345 (1993). Once such a showing is made, a municipality may be liable for its custom "irrespective of whether official policy-makers had actual knowledge of the practice at issue." *Thompson*, 885 F.2d at 1444.

The existence of custom for section 1983 liability ensures that counties are held responsible for widespread abuses or practices that cannot be affirmatively attributed to the decisions or ratification of an official policy-maker "but are so pervasive as to have the force of law." *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1444 (9th Cir. 1989). A plaintiff "may be able to prove the existence of a widespread practice, that, although not authorized by written law or express [county] policy, is 'so permanent and well settled as to constitute a custom or usage with the force of law.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-168 (1970).

Here, Plaintiff asserts that Yakima County's policy of keeping inmates separate applied only to an inmate who had been in a fight with another inmate. There were no written policies and procedures mandating "keeping separate" an inmate whom other inmates had labeled a "snitch." The "custom" of which Plaintiff

ORDER - 13

complains is Yakima County's practice of not placing inmates with a "snitch" label on the Keep Separate List, despite knowledge that an inmate who has been labeled a "snitch" is at risk of harm from other inmates. Accordingly, Plaintiff claims that Yakima County's custom or policy was deliberately indifferent to the risk of harm that other inmates posed to an inmate who has been labeled a "snitch."

In accord with Yakima County policy, Plaintiff was returned to 4G on March 12, 2003, a cell unit where he had previously been removed due to safety concerns. Plaintiff was assaulted shortly after his return to 4G. Plaintiff alleges that the undisputed facts show that Yakima County policy was the moving force behind the assault and, as a result, constitute a deprivation of his Eighth Amendment right to be free from cruel and unusual punishment.

Although Plaintiff's motion for summary judgment mentions a second assault occurring on May 10, 2003, while Plaintiff was housed in the BMU, Plaintiff offers no evidence or argument explaining how this assault may be linked to Yakima County liability. (Ct. Rec. 73). Furthermore, Plaintiff's response to Defendant's motion for summary judgment (Ct. Rec. 92) does not contest Defendant's motion with respect to the May 10, 2003 assault, but merely focuses on the March 12, 2003 assault.[1] Accordingly, the Court finds the May 10, 2003 assault immaterial to Plaintiff's Eighth Amendment county liability claim.

---

[1] Pursuant to Local Rule 56.1(d), the failure to file a statement of specific facts in opposition to a motion for summary judgment allows the court to assume the facts as claimed by the moving party exist without controversy.

ORDER - 14

Defendants correctly argue that Plaintiff lacks evidence of repeated constitutional violations or widespread abuses to establish a custom or policy to support a claim against Yakima County. Proof of a single incident of unconstitutional activity does not show a custom or practice. Plaintiff's case fails to show a history of Yakima County policies, customs, or practices for housing reputed snitches that was the moving force of Plaintiff's assault. His assault is the only evidence Plaintiff can offer to establish such a policy or custom. There is no evidence of any history over any period of time that Yakima County inmates have been assaulted for being snitches or that Yakima County has demonstrated deliberate indifference to the risk of harm that other inmates pose to an inmate who has been labeled a "snitch." Because Plaintiff cannot establish any history, outside of his own experience, Plaintiff cannot establish a genuine issue of material fact to prove a "widespread practice," or "practices of sufficient duration, frequency and consistency" that amounted to deliberate indifference by Yakima County to the safety of inmates labeled as snitches. Plaintiff fails to show the policy or custom necessary to demonstrate county liability under Section 1983.

Moreover, contrary to Plaintiff's contentions, the undisputed facts show that Yakima County was not indifferent to Plaintiff's safety. The undisputed facts in this case show that Yakima County followed a procedure to protect inmates identified by other inmates as snitches. On February 10, 2003, Officer Santucci removed Plaintiff from cell unit 4G when Plaintiff claimed inmates regarded him as a snitch. Officer Santucci took steps to ensure

ORDER - 15

Plaintiff's safety by having him housed in a different unit. Plaintiff was placed in 4G by Officer Little on March 12, 2003, only after Officer Little discussed housing options with Plaintiff and only after Plaintiff told Officer Little he could not be in 4F or 4H but agreed to placement in 4G. These facts do not demonstrate a deliberate indifference to Plaintiff's safety.

The Court also finds it significant to note that there has been no evidence presented that Plaintiff was assaulted based on his label as a snitch. There has been no showing that the inmates who previously labeled Plaintiff a snitch were the same inmates who assaulted him nor a showing that those inmates who assaulted Plaintiff regarded him as a "snitch." In addition, in light of the clear record of Plaintiff's difficulties with behavior, it is conceivable that the assault occurred for a reason other than his label as a snitch. Accordingly, the nexus between his label as a snitch and the subsequent assault is less than certain.

Nevertheless, to establish county liability, Plaintiff must show he was deprived of his Eighth Amendment rights as a result of Yakima County policy or custom that amounted to deliberate indifference to the safety of inmates labeled as "snitches." Plaintiff has not produced evidence of a custom or policy that was the moving force resulting in Plaintiff's assault. The one-time events with Plaintiff were not the result of well settled customs and thus fail to substantiate a viable claim for county liability. Based on the undisputed facts, the Court finds that Defendants are entitled to summary judgment on Plaintiff's county liability claim.

///

V. <u>Conclusion</u>

Based on the foregoing, it is **ORDERED** that:

1. Defendant's motion to strike, filed February 19, 2008, (**Ct. Rec. 89**) is **DENIED**.

2. Plaintiff's motion for summary judgment (**Ct. Rec. 73**) is **DENIED**.

3. Defendants' motion for summary judgment (**Ct. Rec.85**) is **GRANTED**.

4. Plaintiff's claims against Sheriff Ken Irwin, Plaintiff's claim of deliberate indifference to medical needs, Plaintiff's claims under the Washington State Constitution, and Plaintiff's Eighth Amendment county liability claim are **DISMISSED, with prejudice,** thus concluding this action in its entirety.

**IT IS SO ORDERED**. The District Court Executive is hereby directed to enter judgment in favor of Defendants and against Plaintiff, file this Order, provide copies to counsel for Plaintiff and Defendants, and **CLOSE** this file.

DATED this   14th   day of March, 2008.

                    _S/James P. Hutton_
                    JAMES P. HUTTON
              UNITED STATES MAGISTRATE JUDGE

ORDER - 17